IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | |
| Diana M. Onifer | Case No.16-22349CMB |
| Michael S. Onifer | Chapter 13 |
| Debtor(s) | |
| Wilimington Savings Fund Society, FSB | |
| doing business as Christiana Trust, not | Re Doc.83 |
| in its Individual Capacity but Solely as | |
| Trustee for BCAT 2014-4TT c/o | |
| Shellpoint Mortgage Servicing | |
| Movant(s) | |
| | |
| vs. | |
| Diane M. Onifer, Michael S. Onifer | |
| And Ronda J. Winnecour, Trustee | Hearing Date 4/5/18 |
| Respondent(s) | |

<u>TRUSTEE'S RESPONSE TO MOTION TO RECONSIDER AND VACATE FEBRUARY 28, 2018 ORDER, OR , IN THE ALTERNATIVE, TO AMEND FEBRUARY 28, 2018 ORDER</u>

Ronda J. Winnecour, Chapter 13 Trustee, respectfully represents the following:

1.   Wilmington Savings Fund Society (Wilmington)  seeks to vacate this Honorable Court's Order of February 28, 2018 requiring the President/CEO of Wilmington Savings Fund Society, FSB to "appear and be prepared to testify at a hearing scheduled for April 11, 2018 at 2:00 p.m".

2.   This Court ordered further that:  "the President/CEO must be prepared to provide proof at the hearing that Wilmington's records have been corrected to show that all disallowed charges listed in the notices of post-petition mortgage fees, expenses and charges filed on September 13, 2016, September 21, 2016 and November 17, 2016 have been completely removed.  The President/CEO should also be prepared to prove every payment, application of payment, disbursement and charge from the inception of the loan.  The President/CEO

must also provide a complete loan history from the inception of the loan on December 13, 2106."

3. This Court ordered further that: "the parties shall present evidence at the hearing scheduled for April 11, 2018 as to whether the pre-petition obligation of Wilmington's proof of claim shall be fixed at zero."

4. This Court's order arose from a series of inappropriate charges and notices filed by Wilmington Savings Fund Society for a mortgage loan in the above-captioned case. The loan is currently being serviced by Shellpoint.

5. The matter arises from Wilmington's failure to follow multiple orders of Court.

6. The Court is aware, through multiple prior pleadings, of the facts leading to this Court's order of February 28, 2018, so they will not be reviewed at length in this response. This Court's order is a response to Wilmington's misconduct.

7. Wilmington filed three Notices of Postpetition Fees. The first was filed on September 13, 2016 and sought $500 in attorney's fees purportedly incurred on August 12, 2016, as well as a foreclosure fee in the amount of $470 and foreclosure costs in the amount of $3,732.05. The second was filed on September 21, 2016 and sought $500 in attorney's purportedly incurred on August 12, 2016. The third Notice was filed on November 17, 2016 and sought a "postponement fee" incurred on November 16, 2016 in the amount of $100. The Trustee objected to all of the Notices.

8. All of the Notices were filed in the name of Wilmington Savings Fund Society, FSB. All of the Notices and the proof of claim were purportedly filed by the same individual: Edwin Hugh Russell, II.

9. With regard to the first notice, the Trustee pointed out that there was no supporting documentation for the $500 in attorney's fees and that the remaining charges were prepetition obligations not post- petition obligations. The charges were also duplicated by the prepetition proof of claim. The Trustee objected to the third Notice because there was no "postponement" of any kind requested by the debtor, the Trustee or the creditor on or about November 16, 2016 so the charge appears to be fabricated.

10. Wilmington contended it in its response to the Trustee's objection that it attempted to withdraw the first Notice (however there was no order granting the withdrawal.

11. On October 25, 2017 this Honorable Court entered an order disallowing all of these charges and requiring the Respondent: "to provide to the Court proof that the records have been adjusted to remove these charges no late than 60 days from the date of this Order. The proof must include a notarized affidavit by a corporate officer reflecting that the charges have been removed as well as (a) full and comprehensible loan history from the inception of the loan."

12. On December 22, 2107, the creditor filed an affidavit signed by Hugh Russell. Presumably he is the same individual who filed the fraudulent and erroneous notices. His attested (under penalty of perjury) that Wilmington adjusted its records to remove: "the attorney's fees incurred on August in the amount of $500.00 and a foreclosure fee incurred on June 7, 2016 in the amount of $470.00."

13. However, in direct and deliberate contravention of this Court's order (which clearly disallowed all charges) he attested that the amount of $3,732.05 was moved to the pre-petition history. This charge already appeared on the

prepetition proof of claim so the creditor was deliberately seeking double-recovery of a charge the Court completely disallowed.

14. The bogus $100 charge was not resolved in the affidavit.

15. The so-called affidavit made it clear that Wilmington continued to ignore this Court's orders.

16. On January 10, 2018, the Trustee filed a Motion to Compel and for Sanctions against Wilmington Savings Fund Society, FSB.

17. The response to the Trustee's Motion to Compel and For Sanctions was filed on behalf of Wilmington Savings Fund Society, FSB.

18. The response acknowledged that Wilmington continued to carry charges on this loan that were specifically disallowed by this Court's order of October 25, 2017, specifically the $100.00 charge requested in the November 17, 2016 Notice and the foreclosure charges of $470 and $3,732.05 requested in the September 13, 2016 Notice. This Court's order disallowed all of those charges- there was no order authorizing them to continue on pre-petition obligation.

19. The response also admitted that Wilmington failed to comply with this Court's orders concerning the affidavit of a corporate officer and a loan history from the inception of the loan.

20. On February 16, 2018, Wilmington filed an Amended Affidavit under the signature of Hugh Russell. This affidavit claimed to have removed the charges of $500 (the attorney's fees), $470 for the foreclosure fees and $100 for the postponement fee. Clearly the charges of $3,732.05 remain on the loan despite this Court's Order disallowing them.

21. The remaining attachments clearly indicate that Wilmington is the principal and that Shellpoint is merely servicing the loan under a limited power of attorney arrangement.

22. The loan history that is attached is again, not from the inception of the loan.

23. A third affidavit was filed by Wilmington on February 16, 2018. This affidavit was filed by Traci Luekhaupt who identifies herself as Vice President (apparently of Shellpoint). She also attests that the charges of $500, $470 and $100 were removed. Again, the charges of $3732.05 remain on the loan despite this Court's order disallowing the charges.

24. On February 28, 2018, this Honorable Court conducted a hearing on the Trustee's Motion to Compel and For Sanctions. At the hearing, the Trustee pointed out the number of failures of Wilmington to comply with this Court's orders. Additionally, the Trustee also advised the Court that the loan history that was provided (again not complete) contained additional post-petition fees and charges not requested under FRBP 3002.1(e).

25. On February 28, 2018, this Honorable Court ordered that the President/CEO of Wilmington Savings Fund Society, FSB: "shall appear and be prepared to testify at a hearing scheduled for April 11, 2018…" and the President/CEO "must be prepared to provide proof at the hearing that Wilmington's records have been corrected to show that all disallowed charges listed in the notices of post-petition mortgage fees, expenses and charges filed on September 13, 2016, September 21, 2016 and November 17, 2016 have been completely removed. The President/CEO should also be prepared to prove every payment, application of payment, disbursement and charge from the inception of

the loan. The President/CEO must also provide a complete loan history from the inception of the loan on December 13, 2106.

26. On March 14, 2018 Wilmington Savings Fund Society, FSB filed a Motion to Reconsider and/or Vacate, or in the alternative to Alter/Amend this Honorable Court's order of February 28, 2016.

27. The basic thread of Wilmington's argument is that the President/CEO doesn't know how to answer the Court's questions. However, it is patently clear from the record that Wilmington is the real party in interest. The decision to allow Shellpoint to service this loan is clearly within the scope of the authority of the President/CEO of Wilmington. The President/CEO is the individual charged with the responsibility for this loan.

28. It is Wilmington who has failed all of the pleadings in this matter and it is Wilmington that was the subject of the original and subsequent objections and orders. Should Wilmington choose to change servicers tomorrow; Wilmington would still receive the payments under the loan.

29. Counsel's argument that the President/CEO of Wilmington: "is under no obligation to gain such knowledge by reviewing the individual loan data prior to the hearing" is yet another testament to Wilmington's intentional defiance of this Court's orders.

30. Wilmington also argues: "The prepetition elements of the proof of claim are outside the jurisdiction of this Court." Again, this is further evidence that Wilmington has absolutely no intention of following this Court's orders.

31. It also remains clear from the tenor of the response that Wilmington's misconduct is knowing and intentional.

32. The Trustee represents that as of today's date March 29, 2018, she has not received a complete loan history from the inception of the loan.

33. This Court's orders continue to be ignored by Wilmington and only the President/CEO can assure the Court that Wilmington will follow this Court's orders in this case and in the future.

34. Obviously, if counsel for the creditor thinks that additional testimony would be helpful to the Court, counsel should be prepared to present it.

35. However, the responsibility, ownership and integrity of this process rest with the President/CEO of Wilmington and this Court appropriately ordered that individual to appear.

Wherefore, the Trustee requests that this Honorable Court deny Wilmington's Motion to Reconsider and Vacate February 28, 2018 Order, Or, In the Alternative, to Amend February 28, 2018 Order.

Respectfully Submitted,

3-30-2018                         /s/ Ronda J. Winnecour
                                  Ronda J. Winnecour (PA I.D. #30399)
                                  Attorney and Chapter 13 Trustee
                                  U.S. Steel Tower – Suite 3250
                                  600 Grant Street
                                  Pittsburgh, PA  15219
                                  (412) 471-5566
                                  cmecf@chapter13trusteewdpa.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| Diana M. Onifer | : | Case No.16-22349CMB |
| Michael S. Onifer | : | Chapter 13 |
| Debtor(s) | : | |
| Wilimington Savings Fund Society, FSB | : | |
| doing business as Christiana Trust, not | : | Re Doc.83 |
| in its Individual Capacity but Solely as | : | |
| Trustee for BCAT 2014-4TT c/o | : | |
| Shellpoint Mortgage Servicing | : | |
| Movant(s) | : | |
| | : | |
| vs. | : | |
| Diane M. Onifer, Michael S. Onifer | : | |
| And Ronda J. Winnecour, Trustee | : | Hearing Date 4/5/18 |
| Respondent(s) | | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th of March 2018, I served one true and correct copy of the foregoing document on the following parties in interest by United States first-class mail, postage prepaid, addressed as follows:

Joseph S. Sisca, Esquire
Assistant U.S. Trustee
Suite 970, Liberty Center
1001 Liberty Avenue
Pittsburgh PA.  15222

William E. Miller, Esquire
Stern & Eisenberg PC
1581 Main Street Suite 200
Warrington PA 18976

Diane Onifer
Michael Onifer
112 West Fourth Avenue
Latrobe PA 15650

Jeffrey Golembiewski, Esquire
225 South Maple Avenue Suite A
Greensburg PA 15601                    /s/Dianne DeFoor_____
                                       Office of Chapter 13 Trustee
                                       US Steel Tower – Suite 3250
                                       600 Grant Street
                                       Pittsburgh, PA  15219
                                       (412) 471-5566